UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| In re<br>Don E. Patterson and<br>Diane M. Patterson,<br>                    Debtors. | Chapter 13<br><br>Case No. 05-31589-svk |
| Don E. Patterson and<br>Diane M. Patterson, on behalf of<br>themselves and others similarly situated,<br>                    Plaintiffs,<br>v.<br>Homecomings Financial, LLC,<br>                  Defendant. | Adversary No. 10-02225 |

**MEMORANDUM DECISION ON MOTION TO DISMISS**

In this adversary proceeding, Don and Diane Patterson (the "Debtors"), on behalf of themselves and others similarly situated, sued their mortgage servicer, Homecomings Financial, LLC ("Homecomings"), for violating the automatic stay of 11 U.S.C. § 362. Homecomings has filed a Motion to Dismiss the Debtors' Complaint for failing to state a claim. After briefing and a hearing, the Court denied Homecomings' Motion; this Memorandum Decision memorializes that decision.

                **I.**        **FACTS AND PROCEDURAL BACKGROUND**

The relevant facts are not disputed. The Debtors filed a Chapter 13 petition on July 13, 2005 and proposed a plan to cure their pre-petition mortgage defaults with Homecomings. The Court confirmed the Debtors' plan on September 30, 2005. The Confirmation Order provided that property of the Debtors' bankruptcy estate would revest in the Debtors only on conversion to Chapter 7, dismissal of their case, or discharge. In 2006, about a year after confirmation, the

Debtors defaulted on their mortgage payments, and Homecomings sought relief from stay. The Debtors and Homecomings entered into a stipulation to enable the Debtors to cure the default, and the Debtors agreed to pay $800 for Homecomings' legal fees associated with the default.

In March 2007, the Debtors refinanced the mortgage, and the payoff statement shows that Homecomings received a $350 "corporate advance" from the refinancing proceeds. The parties agree that the $350 was a post-petition, pre-confirmation charge for Homecomings' attorneys' fees. These attorneys' fees were never disclosed to the Court by a proof of claim, fee application or otherwise. On October 21, 2008, the Debtors filed a Complaint against Homecomings in the United States District Court for the Eastern District of Wisconsin, alleging that Homecomings' collection of the undisclosed fees and charges interfered with the Debtors' ability to fund their plan and constituted a taking of property of the estate in violation of the automatic stay. Homecomings filed a Motion to Dismiss, but Judge Clevert denied the Motion, concluding that under the language of the Debtors' plan and confirmation order, the Debtors' residence and its proceeds were property of the estate, and that the Debtors' Complaint stated a claim for Homecomings' violation of the automatic stay. Judge Clevert also indicated that the dispute should be referred to the Bankruptcy Court, and the parties did not disagree.

On April 28, 2010, this adversary proceeding was opened, and the Debtors filed an Amended Complaint on August 19, 2010. Homecomings responded with a Motion to Dismiss under Bankruptcy Rule 7012 (incorporating Federal Rule of Civil Procedure 12(b)(6)), raising four arguments:

1. Since the Debtors have proposed a "cure plan" not a "payoff plan," Homecomings was not required to seek court approval to collect post-petition legal expenses recoverable under the mortgage.

2. The Debtors failed to plead any injury as a result of Homecomings' conduct.

2

3. The Debtors failed to allege conduct by Homecomings that impacted property of the estate.

4. Homecomings did not collect attorneys' fees in excess of an amount that was disclosed and approved by the Court.

## II.     ANALYSIS

When construing a motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007) (citations omitted). Such factual allegations "must be enough to raise a right to relief above the speculative level" to the level of "plausible." *Id.* at 555–56. In other words, the complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Id*. at 556. "The court will ask itself *could* these things have happened, not *did* they happen." *Swanson v. Citibank, N.A*., 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original). Application of this methodology confirms that the Debtors' Amended Complaint survives Homecomings' Rule 12(b)(6) Motion.

### A. The fee was property of the estate

Homecomings' claim that the collection of the post-petition attorneys' fee did not impact property of the Debtors' estate was already disposed of by the District Court. Judge Clevert stated: "The gist of Homecomings' argument for dismissal of this suit is that the [Debtors'] refinancing proceeds were not property of the estate, and that its actions regarding those funds were not prohibited by the automatic stay." *Patterson v. Homecomings Fin. LLC*, 425 B.R. 499, 503 (E.D. Wis. 2010). Noting that (1) the bankruptcy estate includes proceeds of property of the estate; (2) a Chapter 13 estate includes property acquired after the case is commenced; and (3) the Confirmation Order in this case provided that property remained in the Debtors' estate until

3

discharge, Judge Clevert concluded that the Debtors' residence and the mortgage refinancing proceeds were part of the bankruptcy estate after plan confirmation.[1] *Id.* at 505 (citing *Jones v. Wells Fargo Home Mortg.* (*In re Jones*), 366 B.R. 584 (Bankr. E.D. La. 2007), *aff'd*, 391 B.R. 577 (E.D. La. 2008); *In re Drew*, 325 B.R. 765 (Bankr. N.D. Ill. 2005)). Homecomings' argument that the refinancing proceeds were not property of the estate has been rejected, and that decision is the law of the case. *See Inskeep v. Griffin*, 440 B.R. 148 (N.D. Ill. 2010) (law of the case presumption against reopening matters already decided reflects interests in consistency, finality, and conservation of judicial resources).

### B. The Debtors plead actual injury

Homecomings argues that the Debtors have failed to plead an injury as required to state a claim for violation of the automatic stay. Bankruptcy Code § 362(k)[2] provides:

> Except as provided in paragraph (2), an individual *injured* by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k) (emphasis supplied). Again, as Judge Clevert noted, "A creditor whose claim for a certain amount has been approved by the bankruptcy court but who requires more than that amount from the debtors to satisfy that claim works against § 362." *Patterson*, 425 B.R. at 506. Homecomings "required more, and this court finds that the [Debtors] have alleged a plausible claim that the automatic stay was violated." *Id.* Under the law of the case doctrine, this ruling should not be revisited. *See Inskeep*, 440 B.R. 148.

---

[1] Judge Clevert rejected Homecomings' claim that because the debtors received a discharge on October 30, 2008, and the plan provided that the Debtors' property revests after discharge, the refinancing proceeds taken by Homecomings were not required for the plan and were not property of the estate. Such an argument involves a factual inquiry and cannot be decided on a Motion to Dismiss.

[2] For purposes of this Decision, this Court refers to § 362(k), rather than the former § 362(h).

4

At oral argument, Homecomings posited that even if Homecomings collected the $350 fee without Court approval, the Debtors suffered no injury because they were contractually obligated to pay the fee and likely would have had no objection to that fee. Therefore, the Debtors failed to plausibly plead a requisite injury. *See Aiello v. Providian Fin. Corp.*, 257 B.R. 245 (N.D. Ill. 2000), *aff'd*, 239 F.3d 876 (7th Cir. 2001); *Fernandez v. GE Capital Mortg. Servs., Inc. (In re Fernandez)*, 227 B.R. 174 (B.A.P. 9th Cir.1998), *aff'd mem.*, 208 F.3d 220 (9th Cir. 2000); *In re Hutchings*, 348 B.R. 847 (Bankr. N.D. Ala. 2006) (where creditor ceased contact before debtor filed complaint for violation of the stay, debtor suffered no damages); *In re Skeen*, 248 B.R. 312 (Bankr. E.D. Tenn. 2000). However, the Court bases its decision on the facts stated in the Complaint, not Homecomings' hypothetical scenario (but for its failure to seek approval of the fees the Debtors would have no cause to challenge the contractually due fees).

Moreover, Homecomings misconstrues the purpose of the automatic stay and cites cases that are readily distinguishable. For example, in *Fernandez*, as a result of the debtor's bad faith and multiple filings, a bank obtained an "*in rem*" stay relief order covering certain property. The debtor sued the creditor for violating the stay when the creditor foreclosed in reliance on the *in rem* order, but the court dismissed the debtor's complaint, finding that the debtor suffered no damages. 227 B.R. 179. In *Aiello*, the debtor alleged that she experienced nausea and fear after receiving a creditor's letter threatening to charge her with fraud unless she reaffirmed $1,000 in credit card debt. 257 B.R. 245. The court held that the debtor's injury did not meet the threshold of recovery under § 362 without more—either medical evidence of emotional distress or egregious conduct by the creditor that creates a presumption of emotional distress, such as a threat of physical harm. On appeal, the Seventh Circuit observed that the debtor's case for emotional distress might have been stronger if buttressed by a claim of financial injury: "The

5

office of § [362(k)] is not to redress tort violations but to protect the rights conferred by the automatic stay. If one creditor muscled out the others in violation of the stay, the bankruptcy court would impose monetary sanctions under subsection [(k)]." 239 F.3d at 880.

Here, unlike *Fernandez* and *Aiello*, the Debtors have alleged a tangible financial injury—that Homecomings actually took property of the estate. In effect, Homecomings "muscled out" other creditors by unilaterally collecting and applying property of the estate to its debt. This case is closer to *In re Radcliffe*, 563 F.3d 627 (7th Cir. 2009), in which a pension fund set off a judgment against benefits payable to the debtor in violation of the automatic stay. The Seventh Circuit affirmed the lower courts' findings of a stay violation, because § 362(k) "does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." 563 F.3d at 630-31.

In this case, the Amended Complaint asserts plausible facts that *could* prove a recoverable injury under § 362. No more is required to survive a Rule 12(b)(6) Motion to Dismiss. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009); *Twombly*, 550 U.S. 544; *Swanson,* 614 F.3d 400. *See also Eddins v. GMAC Mortg. Co. (In re Eddins)*, 2008 WL 4905477 (Bankr. N.D. Miss. Oct. 20, 2008) (complaint seeking injunction to prevent collection of undisclosed charges and alleging mortgagee violated automatic stay and discharge injunction survives motion to dismiss). Even if the stay is viewed as a mere formality as Homecomings suggests, and the creditor believes its actions are justified, as the pension fund did in *Radcliffe*, a creditor cannot take unilateral action to seize property of the estate without any notice to the Court or the trustee. For these reasons, the Court denies Homecomings' Motion to Dismiss the Amended Complaint for failing to allege the requisite injury under § 362(k).

6

### C. The issue of whether Homecomings collected excess fees is a factual determination

Homecomings alleges that the unauthorized fees were somehow subsumed in the fees awarded in connection with the Debtors' default and amended proof of claim filed in 2006. The Debtors dispute this contention, pointing to an entry of $875 for attorneys' fees in the payoff statement, in addition to the $350 corporate advance at issue here. Whether the $350 was part of the $800 disclosed to and approved by the Court is an issue of fact that should not be decided in the context of a Rule 12(b)(6) Motion. The Court agrees with the Debtors that at this stage of the litigation, "It is no part of the court's duty to decide factual issues but only to determine whether there are any such issues to be tried." *Chappell v. Goltsman*, 186 F.2d 215, 218 (5th Cir. 1950). Homecomings' Motion to Dismiss based on the allegation that the $350 fee was approved by the Court as part of the parties' Stipulation is denied.

### D. Even if § 506(b) does not apply to the Debtors' Chapter 13 cure plan, Rule 2016 requires disclosure of fees payable from property of the estate.

Homecomings' remaining argument is that because Bankruptcy Code § 506(b) does not apply to the Debtors' "cure plan," Homecomings was not required to disclose and obtain approval for post-petition legal fees recoverable under the mortgage. The argument starts from the undeniable premise that the Debtors' plan proposed to cure pre-petition defaults under Bankruptcy Code § 1322(b)(5). That section permits a Chapter 13 plan to cure any default within a reasonable time and maintain payments on long term debts. In any such "cure plan," Homecomings argues that post-petition attorneys' fees are not subject to bankruptcy court approval, because § 1322(e) renders § 506(b) inapplicable. Section 1322(e) provides:

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure
7

> a default, the amount necessary to cure the default, shall be
> determined in accordance with the underlying agreement and
> applicable nonbankruptcy law.

Section 506(b) provides:

> To the extent that an allowed secured claim is secured by property
> the value of which, after any recovery under subsection (c) of this
> section, is greater than the amount of such claim, there shall be
> allowed to the holder of such claim, interest on such claim, and any
> reasonable fees, costs, or charges provided for under the agreement
> or State statute under which such claim arose.

Under Homecomings' reading of §§ 1322(b)(5), 1322(e), and 506, no bankruptcy court approval of a mortgage creditor's post-petition fees is required, because post-petition fees are governed solely by the applicable loan agreement and state law.

Numerous courts have addressed this issue, and while an apparent split has developed, a closer look at the seminal case on which Homecomings relies shows an important distinction. In *Padilla v. GMAC Mortgage Corp.*, 389 B.R. 409 (Bankr. E.D. Pa. 2008), the debtor's plan proposed to cure a pre-petition default to GMAC Mortgage Corporation ("GMAC"), and for the debtor to continue making post-petition payments to GMAC according to contract terms. The plan was confirmed on February 23, 1999. On August 22, 2002, the debtor received her discharge, and on August 27, 2002, her bankruptcy case was closed. Two years later, the debtor sold her residence, and paid off the GMAC mortgage. GMAC's payoff statement included over $1,550 in post-petition, pre-confirmation charges for bankruptcy costs and attorneys' fees that had never been disclosed in the bankruptcy case. The debtor paid the disputed charges but then reopened her bankruptcy case and filed a class action against GMAC, asserting violation of the discharge injunction. The bankruptcy court framed the issue as:

> Is there a requirement that a secured creditor give the debtor
> (and/or the trustee) notice when postpetition legal expenses have
> been incurred when a debtor is curing a default through §
> 1322(b)(5) and, if so, does the failure to do so during the pendency
> of the chapter 13 case effectively waive the right to collect the
> charges after the conclusion of the bankruptcy case?

389 B.R. at 439. The court concluded that despite "a rational, and perhaps even compelling case," it found no basis in the Bankruptcy Code or Rules for requiring a creditor to provide a debtor with notice of post-petition legal expenses chargeable under a mortgage being treated under § 1322(b)(5).[3] *Id.* at 437. However, *Padilla v. GMAC* specifically held that Bankruptcy Rule 2016(a) did not apply because "at no point did the creditor in this case seek payment of legal expenses 'from the estate,' as required" under Rule 2016(a). *Id.* at 443.

As Judge Clevert determined, the refinancing proceeds collected by Homecomings were property of the Debtors' bankruptcy estate. Accordingly, unlike in *Padilla v. GMAC*, Bankruptcy Rule 2016 is implicated in this case. That Rule provides in pertinent part:

> An entity seeking interim or final compensation for services, or
> reimbursement of necessary expenses, from the estate shall file an
> application setting forth a detailed statement of (1) the services
> rendered, time expended and expenses incurred, and (2) the
> amounts requested.

Fed. R. Bankr. P. 2016(a).

The court in *In re Aldrich*, 2008 Bankr. LEXIS 2278 (Bankr. N.D. Iowa Sept. 4, 2008), cited *Padilla v. GMAC* for the proposition that: "The requirement of an application for compensation or reimbursement pursuant to Rule 2016(a) does not apply to a mortgage lender's

---

[3] This Court disagrees with the bold statement that the creditor is not even required to tell the debtor about the attorneys' fees being charged to the debtor under the mortgage. Notice to the debtor is typically required by the applicable agreement. For example, paragraph 9 of the Mortgage in this case requires the Lender to notify the Borrower of all fees and charges incurred to protect the Lender's interest in the property and rights under the mortgage. Whether notice to the bankruptcy court and/or trustee is required is a closer question, at least where property of the estate is not involved.

9

contractual fees and charges arising after confirmation." *Aldrich's* sweeping interpretation of *Padilla v. GMAC* is unwarranted. Judge Frank went out of his way in *Padilla v. GMAC* to explain that Rule 2016 only applies to creditors seeking to recover expenses from property of the estate: "Under its plain language, the rule does not apply to a creditor who does not seek legal expenses from the bankruptcy estate." 389 B.R. at 443. Moreover, the *Aldrich* court, after determining that Rule 2016 did not apply, crafted a set of disclosure rules for cure plans including:

> (b) Annually, beginning one year after entry of the initial plan confirmation order, the creditor shall submit to Trustee, the debtors and debtors' attorney a 12-month summary of the activity on the loan, including an itemization of all payments, fees, expenses or charges on the account. The creditor's failure to give such notice shall be deemed a waiver for all purposes of any claim for fees, expenses or charges accrued during that year.
>
> (c) No later than 90 days before debtors are scheduled to make the final plan payment, the creditor shall file an initial or amended proof of claim which clearly identifies and itemizes the fees, charges and expenses which accrued postpetition and remain owing.

2008 Bankr. LEXIS 2278.

Several courts have held that mortgage creditors must disclose (either in a proof of claim or fee application) post-petition fees and charges to be paid from property of the estate. *See*, *e.g.*, *Cano v. GMAC Mortg. Corp. (In re Cano),* 410 B.R. 506 (Bankr. S.D. Tex. 2009); *In re Payne*, 387 B.R. 614, 631 (Bankr. D. Kan. 2008) ("Post-petition fees and charges are subject to review under the debtor's plan, state law, Fed. R. Bankr. P. 2016(a), and § 105."); *Padilla v. Wells Fargo Home Mortg., Inc.*, 379 B.R. 643 (Bankr. S.D. Tex. 2007); and *Tate v. NationsBanc Mortg. Corp. (In re Tate)*, 253 B.R. 653 (Bankr. W.D. N.C. 2000). Notably, even case law cited by Homecomings supports this requirement. *In re Plant*, 288 B.R. 635 (Bankr. D. Mass. 2003).

10

In *Plant*, the court held that even if § 506(b) does not apply, the court may condition allowance of a secured creditor's fees on the filing of a fee application conforming to Bankruptcy Rule 2016.

Since Rule 2016(a) explicitly requires any entity seeking compensation or reimbursement of expenses from the bankruptcy estate to file an application detailing the services rendered and expenses incurred, this Court agrees that a mortgage servicer seeking post-petition attorneys' fees and similar charges from the estate must disclose those fees to the Court. Requiring this disclosure is good policy, as it provides the debtor, trustee and Bankruptcy Court with the opportunity to determine the propriety of fees and expenses paid by the estate. And compelling the creditor to disclose fees and expenses purportedly allowed by the loan agreement should neither constitute an impermissible modification of that agreement under § 1322(b)(2) nor run afoul of § 1322(e). Therefore, even assuming as Homecomings argues, that § 506(b) does not apply, the Court concludes that Rule 2016(a) requires that Homecomings disclose to the Court the fee it took from the Debtors' estate.

At oral argument, Homecomings stressed two cases for the proposition that post-confirmation application of Rule 2016(a) amounts to an improper modification of the creditor's rights under § 1322(b)(2). *See In re Nelson*, 408 B.R. 394 (Bankr. D. Colo. 2008); *In re Hudak*, 2008 WL 4850196 (Bankr. D. Colo. Oct. 24, 2008). *Nelson* and *Hudak* involve the construction of Chapter 13 plan provisions requiring mortgage servicers to disclose post-petition fees and charges.

The *Nelson* plan contained a provision requiring creditors seeking fees for post-petition legal services to apply to the court for approval of such fees. The court disallowed the plan provision, finding that no fee application was required under Rule 2016, since the post-

11

confirmation fees were not being paid from property of the estate. Moreover, there was no time limit on the requirement, and the court was concerned that it would be considering fee applications long after discharge and closing of the case. Notwithstanding its refusal to confirm the plan, the *Nelson* court noted that it had jurisdiction to determine the reasonableness and necessity of post-confirmation fees, and that requiring the creditor to disclose post-petition fees was not an impermissible modification of the creditor's rights under § 1322(b)(2). The court concluded: "Until a local or national rule is developed, the Court is satisfied with a provision that merely states that mortgage fees incurred during the case are subject to bankruptcy court review prior to the closing of the case." 408 B.R. at 403.

In *Hudak*, the plan provided: "Creditors seeking fees, charges or cost reimbursement for legal services performed after the filing of this case must apply to the Court for approval of such fees, charges or costs." 2008 WL 4850196, *7. Citing *Padilla v. GMAC,* the court noted that a creditor should not be required to file a fee application when the post-petition fees were not sought from the estate. However, even though a formal fee application was not required, the *Hudak* court stated that it would retain jurisdiction to consider any objection raised by the debtor to any post-petition fee charged by a creditor, implying that the creditor should disclose those fees and charges to the extent they were incurred during the case.

The courts in this district have expressly endorsed provisions in Chapter 13 plans requiring creditors to disclose post-petition fees and charges, finding no impermissible modification of a creditor's rights in such provisions. *See In re Teran*, 2010 WL 1655892 (Bankr. E.D. Wis. April 23, 2010); *In re Coria*, 2009 WL 3210035 (Bankr. E.D. Wis. Oct. 7, 2009); *In re Patton*, 2008 WL 5130096 (Bankr. E.D. Wis. Nov. 19, 2008). In *Patton*, Judge McGarity disagreed with *Hudak*, and allowed a notice provision to be included in a Chapter 13

12

plan, reasoning: "The plan provision does not deny or, in any way, change the creditors' right to charge these fees; it merely establishes a procedure so the debtors know of the charge, and the debtors have a forum in which to object to the propriety of the fees around the time they are charged." 2008 WL 5130096, *4-5. And in *Teran*, Judge McGarity held that a debtor did not modify a mortgage creditor's rights by including a plan provision that not only gave the debtor an opportunity to learn of charges, but required the creditor to give annual notice of such charges. 2010 WL 1655892, *2 ("Letting debtors know about charges is fair, and an annual notice is not too much to ask of the entity doing the charging.").[4]

Since the Debtors have alleged in their Amended Complaint that Homecomings collected property of the estate for application to Homecomings' legal fees without disclosing those fees to the trustee or the Court, the Debtors have stated a plausible claim that Homecomings violated Rule 2016 and the automatic stay.

### III. CONCLUSION

For all the foregoing reasons, Homecomings' Motion to Dismiss the Amended Complaint is denied.

Dated: February 23, 2011

By the Court:

Susan V. Kelley
U.S. Bankruptcy Judge

---

[4] In 2009, this district adopted a local rule requiring notice: "Chapter 13; Demand for Itemization of Charges Accrued During Plan. Upon request of the debtor to a creditor secured by real estate, the creditor shall provide to the debtor, within 28 days after demand, a statement itemizing any unpaid charges that have accrued during the pendency of the bankruptcy case." Bankr. E.D. Wis. L.R. 3002 (adopted May 5, 2009).